Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Southern District of New York                              7:20-cv-04138

| | |
|---|---|
| Joyce Falborn, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Unilever United States, Inc., | |
| Defendant | |

Plaintiff by attorneys allege upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Unilever United States, Inc. ("defendant") manufactures, distributes, markets, labels and sells its Homemade Vanilla Ice Cream under the Breyers brand ("Product").

2.      The Product is available to consumers from retail and online stores of third-parties and is sold in cartons of 1.5 Quarts.

3.      The relevant front label representations include "Breyers," "Homemade Vanilla," "It's How Homemade Should Taste," a vanilla flower and a bucket of fresh cream.



4.      The representation as "Homemade Vanilla Ice Cream" gives reasonable consumers the impression that (1) vanilla is the characterizing flavor, (2) vanilla is contained in a sufficient amount to flavor the product, (3) the flavor is only provided by the natural characterizing flavor of vanilla and (4) no other flavors simulate, resemble, reinforce, extend, enhance or compensate for any reduction in the amount of real vanilla used to supply the vanilla taste.

5.      In fact, defendant's Product contains a de minimis amount of real vanilla, with its vanilla taste provided by artificial vanillin, not disclosed to consumers as required on the front label (or ingredient list), as required.

I.      Vanilla is Perennial Favorite Ice Cream Flavor

6.      Ice cream is a year-round treat enjoyed by 96% of Americans.[13]

---

[13] Arwa Mahdawi, The big scoop: America's favorite ice-cream flavor, revealed, The Guardian, July 11, 2018

7.    Its popularity is attributed "to the perfect combination of elements – sugar, fat, frozen water, and air – that make up the mouthwatering concoction."[14]

8.    Vanilla is the consistent number one flavor for ice cream for 28% of Americans, confirmed two groups who would know – the International Dairy Foods Association (IDFA) (ice cream producers) and National Ice Cream Retailers Association (ice cream parlors).

9.    The reasons for vanilla's staying power are "not only because it is creamy and delicious, but also because of its ability to enhance so many other desserts and treats."[15]

10.    By some estimates, approximately two-thirds of "all ice cream eaten is either vanilla or vanilla with something stirred into it, like chocolate chips."[16]

11.    The applications of vanilla ice cream include its centerpiece between chocolate wafers ("sandwich"), enrobed in chocolate on a stick ("bar"), topping a warm slice of fresh-baked pie ("à la Mode"), drizzled with hot fudge, sprinkled with crushed nuts and topped by a maraschino cherry ("sundae") or dunked in a cold frothy glass of root beer ("float").[17]

II.    Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

12.    The tropical orchid of the genus Vanilla (*V. planifolia*) is the source of the prized flavor commonly known as vanilla,

13.    Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[18]

---

[14] Vox Creative, The Reason You Love Ice Cream So Much Is Simple: Science, Eater.com, October 12, 2017.
[15]Press Release, IDFA, Vanilla Reigns Supreme; Chocolate Flavors Dominate in Top Five Ice Cream Favorites Among Americans, July 1, 2018
[16]Bill Daley (the other one), Which vanilla ice cream is the cream of the crop? We taste test 12 top brands, Chicago Tribune, July 18, 2018
[17] The True Wonders of Vanilla Ice Cream, FrozenDessertSupplies.com.
[18] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018.

14.     Though the Pure Food and Drugs Act of 1906 ("Pure Food Act") was enacted to "protect consumer health and prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the genuine articles.[19]

15.     It was evident that protecting consumers from fraudulent vanilla would be challenging, as E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[20]

16.     This demand could not be met by natural sources of vanilla, leading manufacturers to devise clever, deceptive and dangerous methods to imitate vanilla's flavor and appearance.

17.     Today, headlines tell a story of a resurgent global threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[21]

18.     Though "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

---

[19] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.

[20] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein, "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

[21] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.

A. Food Fraud as Applied to Vanilla

19.    Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[22]

20.    The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities in today's interconnected world.[23]

| Type of Food Fraud | Application to Vanilla |
|---|---|
| ➢ Addition of markers specifically tested for | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| ➢ Appearance of *more* and/or higher quality of the valued ingredient | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks the product contains real vanilla beans, when the ground beans have been exhausted of flavor<br>• Caramel to darken the color of an imitation vanilla so it more closely resembles the hue of real vanilla[24]<br>• Annatto and turmeric extracts in dairy products purporting to be flavored with vanilla, which causes the color to better resemble the hue of rich, yellow butter |
| ➢ Substitution and replacement of a high-quality ingredient with alternate ingredient of lower quality | • Tonka beans, though similar in appearance to vanilla beans, are banned from entry to the United States due to fraudulent use<br>• Coumarin, a toxic phytochemical found in Tonka beans, added to imitation vanillas to increase vanilla flavor |

---

[22] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.

[23] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.

[24] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.

perception

- ➤ Addition of less expensive substitute ingredient to mimic flavor of more valuable component

  - Synthetically produced ethyl vanillin, from recycled paper, tree bark or coal tar, to imitate taste of real vanilla

- ➤ Compounding, Diluting, Extending

  - "to mix flavor materials together at a special ratio in which they [sic] compliment each other to give the desirable aroma and taste"[25]

  - Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[26]

  - "Spiking" or "fortification" of vanilla through addition of natural and artificial flavors including vanillin, which simulates vanilla taste but obtained from tree bark

- ➤ Addition of fillers to give the impression there is more of the product than there actually is

  - Injection of vanilla beans with mercury, a poisonous substance, to raise the weight of vanilla beans, alleged in *International Flavors and Fragrances (IFF), Inc. v. Day Pitney LLP and Robert G. Rose,* 2005, Docket Number L-4486-09, Superior Court of New Jersey, Middlesex County

- ➤ Ingredient List Deception[27]

  - Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list
    - o "ground vanilla beans" gives impression it describes unexhausted vanilla beans when actually it is devoid of

---

[25] Chee-Teck Tan, "Physical Chemistry in Flavor Products Preparation: An Overview" in Flavor Technology, ACS Symposium Series, Vol. 610 1995. 1-17.
[26] Berenstein, 423.
[27] A recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar.

flavor and used for aesthetics

o "natural vanilla flavorings" – "-ing" as suffix referring to something *like* that which is described

o "Vanilla With Other Natural Flavors" – implying – wrongly – such a product has a sufficient amount of vanilla to characterize the food

o "Natural Flavors" – containing "natural vanillin" derived not from vanilla beans but from tree pulp. When paired with real vanilla, vanillin is required to be declared as an artificial flavor

o "Non-Characterizing" flavors which are not identical to vanilla, but that extend vanilla

21.     The "plasticity of legal reasoning" with respect to food fraud epitomize what H. Mansfield Robinson and Cecil H. Cribb noted in 1895 in the context of Victorian England:

> the most striking feature of the latter-day sophisticator of foods is his knowledge of the law and his skill in evading it. If a legal limit on strength or quality be fixed for any substance (as in the case of spirits), he carefully brings his goods right down to it, and perhaps just so little below that no magistrate would convict him.

*The law and chemistry of food and drugs*. London: F.J. Rebman at p. 320.[28]

III.    Standards of Identity for Ice Cream, Vanilla and Vanilla Ice Cream

22.     To prevent consumer deception when purchasing products labeled as "vanilla ice cream," standards of identity were established which fixed the composition of ingredients in these foods. *See* 21 U.S.C. §343(g) (requiring that where a food "purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations," it must "conform[s] to such definition and standard" and must be labeled with "the name of the food specified in the definition and standard.").

---

[28] Cited in Sébastien Rioux, "Capitalist food production and the rise of legal adulteration: Regulating food standards in 19th-century Britain," Journal of Agrarian Change 19.1 (2019) at p. 65 (64-81).

23.    The purpose of the standards was to enable consumers to quickly compare a variety of similar-looking products by only looking at the front label.[29]

24.    Only after intensive fact-finding regarding the issues facing consumers was a standard developed.

25.    For instance, in contemplating standards for vanilla ice cream, Congress questioned industry executives who sought to label their products "vanilla ice cream" which contained vanillin from sources other than vanilla beans.

Mr. Kenney[30]:    Do you not think, though, Mr. Schmidt, that if you label it vanilla ice cream, it ought to be vanilla; and if it is made with vanillin extracted from oil of cloves, you ought to label it manufactured with such vanillin?

Mr. Schmidt[31]:    Well, we, of course, do not think so. That is why we are here making our protest. We think, after all, the consuming public is accustomed to accepting as vanilla artificial vanillas.

Mr. Kenney:    *We agree that Barnum educated us along that line a long time ago.* (emphasis added)

……………

Mr. Chapman[32]:    I do think that if it is chocolate it ought to be labeled "chocolate"; and if it is flavored with vanillin made from oil of cloves, it ought to be labeled to show that it is flavored with vanillin made from oil of cloves; and if it is flavored with vanilla, it ought to be labeled "vanilla"; and if it is flavored with lemon, it ought to be labeled lemon; and if it is cherry, it ought to be labeled "cherry."

---

[29] Christopher Chen, "Food and drug administration food standards of identity: Consumer protection through the regulation of product information." Food & Drug LJ 47 (1992): 185.
[30] Congressmen E.A. Kenny of New Jersey
[31] Ice cream industry executive.
[32] Congressmen Virgil Chapman of Kentucky.

26.    Later in the hearing, Mr. Chapman and another industry representative engaged over the proper declaration of flavor for ice cream:

Mr. Chapman:    Do you make raspberry?

Mr. Hibben[33]:    Yes.

Mr. Chapman:    And you put that on the label?

Mr. Hibben:    We say "raspberry ice cream."

Mr. Chapman:    And if it is peach, you put that on the label?

Mr. Hibben:    It is peach ice cream; yes.

Mr. Chapman:    And If you call it vanilla, what do you put on?

Mr. Hibben:    We put "vanilla ice cream" on our labels. That is what we want to continue to do. We want to put vanilla on those labels.

Mr. Chapman:    But you say you put in it oil of cloves instead of vanilla.

Mr. Hibben:    We do not use cloves. We use vanillin derived from the oil of cloves.

Mr. Chapman:    If you put out strawberry ice-cream, you would not want to use raspberry to make it, would you?

Mr. Hibben:    No; but we use vanillin, which is an ingredient of the vanilla bean and, its true to name.

Mr. Chapman:    Is it an extract from the vanilla bean?

Mr. Hibben:    It is both. It is taken both from the eugenol and the vanilla bean and is the same product. If you were a chemist you could not tell the difference, and if you were a doctor, you would say that one is just as harmless as the other.

Mr. Chapman:    I do not object to buying artificial vanilla ice cream if it is pure, but if it is artificial. I would like to know what I am getting.

27.    New York State adopted and incorporated all provisions of the FFDCA through its Agriculture and Markets Law ("AGM") and accompanying regulations. *See* Title 1, Official

---

[33] Ice cream industry executive.

Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR").

A. <u>Vanilla and Ice Cream Standards</u>

28.    Prior to adoption of the vanilla standards, "the widespread and exceedingly serious adulteration of vanilla extracts that are now labeled 'pure'…deprive[d] the consumer of value the product is represented to have, and for which the consumer pays.[34]

29.    The vanilla standards were intended to "insure, for the protection of both the consumers and our industry, that all vanilla products are correctly labeled and meet at least minimum standards."[35] *See* 21 C.F.R. Part 169 ("Food dressings and flavorings"); 21 C.F.R. §169.3(c) ("vanilla" was defined as a "*unit of vanilla constituent* means the total sapid and odorous principles extractable from one unit weight of vanilla beans," or 13.35 ounces, referencing 21 C.F.R. §169.3(b); 21 C.F.R. § 169.175 – 21 C.F.R. § 169.182 (vanilla products).

30.    New York State adopted and incorporated the vanilla standards:

[T]he commissioner hereby adopts the following as the standards of identity and/or standards of quality, and tolerances for food and food products as published in title 21 of the Code of Federal Regulations…21 CFR part 169, containing the Federal definitions and standards for *Food Dressings and Flavorings* at pages 600-606.

1 NYCRR § 250.1(a)(17) at Chapter VI ("Food Control"), Subchapter C, Food and Food Products, Part 250, ("Definitions and Standards") (italics in original).

---

[34] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960; Memorandum of Telephone Conversation between Mr. Alfred Daibock, Commercial Policy Division, Department of State and Tom Bellis, Food Standards Branch, FDA (the FDA stated, "The prime purpose sought to be served by the standards adopted was to promote honest, fair dealing with housewives and other consumers of the flavorings covered by the standards").
[35] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960; Press Release U.S. Department of Health, Education, and Welfare, September 13, 1963.

31.     For ice cream, New York incorporated the ice cream regulations set by the FDA:

The standards of identity for ice cream and frozen custard, goat's milk ice cream, ice milk, goat's milk ice milk, mellorine, sherbet, and water ices as set forth in sections 135.110, 135.115, 135.120, 135.125, 135.130, 135.140 and 135.160, respectively, of title 21 of the Code of Federal Regulations (revised as of April 1, 2010) are *adopted and incorporated by reference* herein.

1 NYCRR § 17.19, Additional standards of identity for frozen desserts at Chapter I ("Milk Control*"), Subchapter A ("Dairy Products"), Part 17 ("Requirements for the Labeling of, and Definitions and Standards of Identity for, Milk, Milk Products and Frozen Desserts") (emphasis added).

32.     This consistency between federal and New York requirements was emphasized:

It is further declared to be in the interest of the dairy industry and of the consuming public that there be *uniformity of standards for frozen desserts as between the various states and the federal government* to the end that there may be free movement of frozen desserts between the states and to the end that the inefficiency, needless expense, and confusion caused by differences in products sold under the same name, and *differences in labeling of identical products may be eliminated*. (emphasis added).

AGM § 71-a ("Declaration of policy").

33.     The result was that the New York State labeling requirements for vanilla ice cream products are identical to those established by the FDA.

## IV.   Shortage of Vanilla Leads to Cut Corners and Consumer Deception

34.     For decades, The Flavor and Extract Manufacturers Association ("FEMA") protected consumers from misleading vanilla labeling through "self-policing," where companies were accountable to industry standards which followed federal regulations.

35.     However, FEMA was forced to abandon these efforts and disband its Vanilla Committee due to alleged financial pressure from its largest members such as Unilever.

36.     Into this gap, flavor and food companies quickly reverted to practices which had been eradicated with the promulgation of the vanilla standards in the early 1960s.

37.     The recent global shortage of vanilla beans has provided the flavor industry new

ways to "innovate[ing] natural vanilla solutions…to protect our existing customers."[36]

38.     When less vanilla is available, customers of flavor companies – food manufacturers – must purchase higher margin, proprietary, "vanilla-like" flavorings made with advanced technology and synthetic biology.

39.     According to Suzanne Johnson, vice president of research at a North Carolina laboratory, "Many companies are trying to switch to natural vanilla with other natural flavors [WONF] in order to keep a high-quality taste at a lower price," known as "Vanilla WONF."

40.     The head of "taste solutions" at Irish conglomerate Kerry plc, urged flavor manufacturers to "[G]et creative" and "build a compounded vanilla flavor with other natural flavors."

41.     A compounded vanilla flavor "that matches the taste of pure vanilla natural extracts" can supposedly "provide the same vanilla taste expectation while requiring a smaller quantity of vanilla beans. The result is a greater consistency in pricing, availability and quality."[37]

42.     These compounded flavors exist in a "black box" with "as many as 100 or more flavor ingredients," including "naturally produced vanillin," potentiators and enhancers, like maltol and piperonal, blended together to enhance the vanilla, allowing the use of less vanilla to achieve the intended taste.[38]

---

[36] Amanda Del Buono, Ingredient Spotlight, Beverage Industry, Oct. 3, 2016.
[37] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.
[38] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018; Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611 (describing the flavor industry's goal to develop vanilla compound flavors "That *Seem*[s] to be Authentic or at Least Derived from a Natural Source") (emphasis added).

V.     "Vanilla Ice Cream" Without Qualification Tells Consumers All of Its Flavor and Vanilla
       Taste is from Vanilla Beans

       43.     According to John B. Hallagan and Joanna Drake, the former and current legal

advisors for The Flavor and Extract Manufacturers Association of the United States ("FEMA"):

> When consumers purchase ice cream labeled as "vanilla ice cream" they expect it
> to be flavored with vanilla flavoring derived from vanilla beans *unless labeled
> otherwise*. As we shall see, this expectation is codified in two U.S. federal standards
> of identity, one for vanilla flavorings and one for ice cream.[47] (emphasis added).

       44.     Daphna Havkin-Frenkel, editor of the *Handbook of Vanilla Science and Technology*,

and a leading scholar and researcher on vanilla, summarized these categories:[48]

> [A]s defined by the FDA Standard of Identity...Vanilla ice cream
> Category I contains only vanilla extract. Vanilla ice cream Category II
> contains vanilla made up of 1 oz of synthetic vanillin per 1 gallon of 1-
> fold vanilla extract. Vanilla ice cream Category III contains synthetic
> ingredients.

       45.     Carol McBride, U.S. vanilla category manager for global flavor giant Symrise,

echoed these requirements and their effect on consumers: "If the flavor comes partially or fully

from another source, the company must stamp 'vanilla flavored' or 'artificial vanilla' on the front

of the package, a likely turnoff to consumers."[49]

       46.     The "Category 1" requirements are codified at 21 C.F.R. § 135.110(f)(2)(i), which

states:

> If the food contains no artificial flavor, the name on the principal display panel or
> panels of the label shall be accompanied by the common or usual name of the
> characterizing flavor, e.g., "vanilla", in letters not less than one-half the height of
> the letters used in the words "ice cream".

---

[47] John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States,
"Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Apr. 25, 2018.
[48] Daphna Havkin-Frenkel and Faith C. Belanger, eds., *Handbook of Vanilla Science and Technology*, Wiley, 2018
(221).
[49] Melody M. Bomgardner, "The problem with vanilla," Chemical & Engineering News, Sept. 12, 2016.

47.    That the ice cream regulations are meant to be read "together with the vanilla standard of identity means that the characterizing flavor for this [Category 1] ice cream must be provided only by vanilla extract complying with the standard at 21 CFR Section 169.175, or another standardized vanilla flavoring derived solely from vanilla beans."[50]

48.    Because the Product is "identified as '[Homemade] Vanilla Ice Cream,' [it] is subject to the category I ice cream requirements and, therefore, must contain only the characterizing flavor derived from vanilla beans."  Exhibit "A," Letter from J.L. Summers, Assistant to the Director, Division of Regulatory Guidance, Bureau of Foods to David B. Daugherty, Zink & Triest Company, Inc., April 10, 1979   ("Summers Letter, April 10, 1979").

49.    As Dr. Mark Black points out,

Because vanilla is a defined food, the CFR links the ice cream rules (21 CFR 1:135) to the vanilla rules (21 CFR 1:169) through the three-tiered nomenclature. However, the CFR does not call this out in the ice cream rules. Indeed, vanilla extract is not mentioned in any other part of the ice cream rules.

Exhibit "B," Mark Black, "The Use of Vanilla in Ice Cream: Rules, Regulations and Interpretations – All Are Needed For A Thorough Understanding," p. 3.

50.    The International Dairy Foods Association ("IDFA") summarized the unique distinction between natural and artificial flavors in the context of ice cream as follows:

Flavors which are derived from natural sources other than the characterizing flavor and simulate, resemble or reinforce the characterizing flavor, are considered artificial flavors. Products flavored in such a manner must be labeled according to either flavor labeling requirements of Category II or III products.[51]

*51.*    Though the text of 21 C.F.R. § 135.110(f)(2)(i) does not distinguish between flavor from the natural characterizing flavor and natural flavors from sources other than the characterizing flavor, the regulations for vanilla and ice cream products "are supplemented by a

---

[50] Hallagan, *supra* note 3, at p. 11.
[51] IDFA, Ice Cream & Frozen Desserts Labeling Manual, 2019 Ed.

formal [Food and Drug Administration ('FDA')] Advisory Opinion, and a collection of FDA-issued regulatory correspondence."[52]

52.    Dr. Black summarized the labeling questions addressed in the early 1980s:

The industry sought clarification of these rules from the U.S. Food and Drug Administration (FDA). From 1979 to 1983, the FDA provided interpretations and ultimately an advisory opinion that clarified the rules around each category. However these have not been widely circulated, thus many ice cream manufacturers continue to be unsure about the legal status of their principal display panels.) (emphasis added).

*See* Exhibit "B," *supra*.

53.    The 1983 Advisory Opinion referenced by Hallagan and Drake and Black was issued by Joseph Hile, Associate Commissioner for Regulatory Affairs, and reaffirmed a 1981 advisory opinion, which further confirmed the interpretation in a 1979 letter to industry members:

The Newberry letter is correct under 21 CFR 135.110(e).[53]  Because that section makes no provision for any natural flavors other than natural characterizing flavors, FDA must treat all natural flavors that simulate the characterizing flavor as artificial flavors when deciding what name should appear on the principal display panel.

Exhibit "C," Advisory Opinion Letter from Hile to industry members, February 9, 1983 ("February 9, 1983 Advisory Opinion") citing Exhibit "D," Letter from R.E. Newberry, Assistant to the Director, Division of Regulatory Guidance, Bureau of Foods to Thompson, October 30, 1979 ("Newberry Letter"); Exhibit "E," Advisory Opinion Letter from Hile to Adams, FEMA President, February 12, 1981 ("February 12, 1981 Advisory Opinion").

54.    Both Hile letters were "specifically identified as [an] advisory opinions," and "represent[s] the formal position of FDA on a matter and except as provided in paragraph (f) of this section, obligates the agency to follow it until it is amended or revoked."  *See* 21 C.F.R. § 10.85(d)(4), 21 C.F.R. § 10.85(e).

55.    These advisory opinions provide clarification to a complex labeling regime for

---

[52] Hallagan, *supra* note 3, at p. 1.
[53] 21 C.F.R. § 135.110(f) was previously 21 C.F.R. § 135.110(e).

vanilla ice cream. *See* 21 C.F.R. § 10.85(j).

56.    The interpretation of the ice cream flavoring regulations is valid and reasonable for at least two reasons.

57.    First, Congress has directly spoken to the precise question at issue.

58.    Second, the longstanding interpretation of the ice cream flavoring regulations is consistent with consumer expectations and the way the standard has always been applied.

VI.    Defendant's Homemade Vanilla Ice Cream is Misleading

59.    The Product is represented as a Category 1 product because "the name on the principal display panel or panels of the label" is "accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla.'" *See* 21 C.F.R. § 135(f)(2)(i).

<u>"Homemade Vanilla"</u>



60.    The Product's ingredient list reveals it is flavored by "Natural Flavor."

**INGREDIENTS:** MILK, CREAM, SUGAR, CORN SYRUP, WHEY, EGG YOLKS, VEGETABLE GUMS (CAROB BEAN, TARA, GUAR), MONO AND DIGLYCERIDES, SALT, ==NATURAL FLAVOR==, ANNATTO (FOR COLOR).

A. <u>"Natural Flavor" is Used to Refer to a Combination Flavor with Vanillin and Other Natural Flavors</u>

61.    That the "natural flavor" contains non-vanilla flavor is alluded to because the bottom of the side panel states "Natural flavor made with vanilla beans from Rainforest Alliance Certified™ farms."



62.    Describing one flavor ("Natural flavor") as "made with" another flavor – "vanilla beans" – is an admission that the vanilla beans are part of the "Natural flavor."

63.    Since a product labeled "vanilla ice cream" (Category 1) "purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations as provided by section 341 of this title," it is required to list the "the common names of optional ingredients (other than spices, flavoring, and coloring)." *See* 21 U.S.C. §343(g).

64.    The Product cannot list "vanilla extract" or "vanilla flavoring" because the "natural flavor" is not an exclusively vanilla ingredient.

65.    The ice cream standard of identity requires that the added "flavoring ingredients" be "declared on the label as required by the applicable sections of parts 101 and 130." *See* 21 C.F.R.

§ 135.110(a)(1); 21 C.F.R. § 135.110(g).

66. Part 101 requires that ingredients be "listed by common or usual name." *See* 21 C.F.R. § 101.4(a)(1).

67. Flavorings other than vanilla "shall be declared according to the provisions of 101.22." *See* 21 C.F.R. § 101.4(b)(1); 21 C.F.R. § 101.22(h)(1) ("The label of a food to which flavor is added shall declare the flavor in the statement of ingredients in the following way…Spice, natural flavor, and artificial flavor may be declared as "spice", "natural flavor", or "artificial flavor", or any combination thereof, as the case may be.").

68. Because all ingredients are required to be "listed by common or usual name," and the names for the exclusively vanilla standardized foods are "vanilla extract" and "vanilla flavoring," the Product admittedly does not contain such ingredients as the sole source of flavoring. S*ee* 21 C.F.R. § 169.175(b)(1) ("The specified name of the food is 'Vanilla extract' or 'Extract of vanilla'.") and 21 C.F.R. § 169.177(b) ("The specified name of the food is 'Vanilla flavoring.'"); *see also* 21 C.F.R. § 101.4(b)(1) (the "name of an ingredient shall be a specific name and not a collective (generic) name," subject to various exceptions).

69. The distinction between vanilla and non-vanilla flavorings is recognized in 21 U.S.C. § 343. *See* 21 U.S.C. § 343(g) (applies to foods which purport to be a standardized food, which include the vanilla products) *but see* 21 U.S.C. § 343(i) (applies to foods which have "no representation as to definition and standard of identity," and stating that "spices, flavorings, and colors…may be designated as spices, flavorings, and colorings without naming each.").

70. "Natural flavor" is the term used for a flavor that may contain some vanilla and non-vanilla natural flavors. *See* 21 C.F.R. § 101.22(h)(1) ("Spice, natural flavor, and artificial flavor may be declared as 'spice', 'natural flavor', or 'artificial flavor', or any combination thereof,

as the case may be.").

71.    21 U.S.C. § 343(g) and 21 U.S.C. § 343(i) make clear that 21 C.F.R. § 101.22(h)(1) is not applicable where the ingredients added are the standardized vanilla foods.

VII.    Defendant's Homemade Vanilla Ice Cream Contains Non-Vanilla Flavor

72.    Analysis of the Product reveals it contains a de minims amount of vanilla, boosted by artificial vanillin.

73.    The designation of the flavor ingredient as "Natural Flavor" is false, deceptive and misleading because the flavor combination contains added vanillin and "other natural flavors" identified as "Vanilla With Other Natural Flavors" or "Vanilla WONF."

74.    A common justification used by companies for the presence of non-vanilla flavors in vanilla ice cream is that they are present in small amounts and are unable to affect the general flavor of the product.

75.    However, this overlooks that (1) added flavors created in a laboratory are highly concentrated and have a flavoring strength several hundred times greater than if the flavor was provided by the characterizing food ingredient (i.e., strawberry flavor vs. strawberries), (2) "one ounce of vanillin is equal to a full gallon of single-fold vanilla extract," only a minute amount is required to contribute flavor to the Product,[54] (3) if the added non-vanilla flavor did not affect the overall product's taste, there is no reason to use it, (4) the regulations prohibit any flavor from non-vanilla sources that affects the amount of vanilla used and (5) consumers are deceived.

A.    Product Contains Vanillin, Wrongly Identified as Part of "Natural Flavor"

76.    Consumers are unable to verify or double-check the Product's ingredient list to see

---

[54] Katy Severson, Imitation vs. Real Vanilla: Scientists Explain How Baking Affects Flavor, Huffington Post, May 21, 2019.

if it contains non-vanilla flavors and artificial flavor, because defendant's "combination flavoring [fails to] identify what the combination is, e.g. 'Vanilla-Vanillin Extract and _____' (the blank to be filled with the names of the particular flavor used) or 'Vanilla-Vanillin Extract with other natural flavors.'" Exhibit "F," FDA, Letter from Taylor M. Quinn to Kenneth Basa, National Food Ingredient Company, August 22, 1979 ("Quinn Letter, August 22, 1979") and Letter from Basa to Quinn, July 31, 1979 ("Basa Letter, July 31, 1979") ("The ingredient statement should declare the standardized flavoring by its specific common or usual name with a parenthetical listing of the optional ingredients required to be declared by the particular standard, and each ingredient of the natural non-vanilla flavoring should be declared by its specific common or usual names."); *see* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b) (requiring vanilla-vanillin extract to be "followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring)'.").

77.    By referring to an ingredient which contains vanilla and vanillin as "natural flavor," defendant's ingredient list furthers the misleading impression of consumers that "it is a 'natural vanilla flavor'" even though it is not derived from vanilla beans.  Exhibit "G," FDA, Letter, Negash Belay to Agneta Weisz, October 10, 2008 ("with respect to labeling, the common or usual name of the product you describe is 'vanillin,' regardless of the type of method used to produce it."); Exhibit "H," FDA, Letter, Manjeet Singh to Anthony Filandro, July 9, 1991 (naturally produced "vanillin would not qualify as 'natural vanillin,' as defined in 21 CFR 101.22(a)(3), because the vanillin is not obtained from vanilla beans, whose flavor it simulates."); Exhibit "I," FDA, Letter, Margaret-Hanna Emerick to Richard Brownell, February 25, 2016 ("natural flavor" must not be used in such a way to imply that it is a "natural vanilla flavor" because it is not derived from vanilla beans").

78.    Because "Vanilla extract (21 CFR 169.175) and vanilla flavoring (21 CFR 169.177)

do not provide for the use of vanillin," it is deceptive to give consumers the impression a product containing added vanillin contains "natural vanilla flavors." Exhibit "J," FDA Letter, Cataline Ferré-Hockensmith to Richard Brownell, April 19, 2005, pp. 1-2; *see* 21 C.F.R. § 169.175(a)(1)-(5) (listing glycerin, propylene glycol, sugar, dextrose and corn sirup as only optional ingredients for vanilla extract).

79.    "[N]atural flavors not derived from vanilla beans," like vanillin, "may be used in combination with the standardized items included under 21 CFR 169 (vanilla-vanillin extract or vanilla-vanillin flavoring) for category II vanilla flavored ice cream provided that the flavoring contributed by or derived from the vanilla beans predominates." Exhibit "F," Quinn Letter, August 22, 1979; *see* 21 C.F.R. §135.110(f)(2)(ii) ("Category II").

80.    Though a naturally derived vanillin may be designated as a "'natural flavor'" or as part of a natural flavor, this is only outside the context of the standardized vanilla ingredients used in vanilla ice cream, "under sections 169.180, 169.181, and 169.182 in 21 CFR.  Exhibit "K," FDA, Letter, Cataline Ferré-Hockensmith to Richard Brownell, August 5, 2008, p. 2; Exhibit "L," FDA, Letter, Cataline Ferré-Hockensmith to Betsy D. Carlton, October 8, 2004 (the common or usual name of vanillin derived through a natural fermentation process is "vanillin" though it may be identified as "'vanillin derived naturally through fermentation' elsewhere on your product label.").

B. <u>"Other Natural Flavors" are Misleading in "Vanilla Ice Cream"</u>

81.    The Product also contains "other natural flavors," which typically includes flavors which are "sweet, creamy and mellow with velvety after-tones," "buttery" and "even smoky." [55]

82.    These highly concentrated flavoring compounds are only needed in small amounts and they give the impression that more vanilla is in the Product.

83.    Large flavor suppliers incorrectly claim that the non-vanilla flavors do not need to be mentioned on the front label because they purportedly do not characterize vanilla.

84.    Defendant's flavor suppliers, i.e., IFF or Givaudan, may falsely identify the flavor combinations provided to defendant as "natural flavor" and fail to disclose the effect of adding vanillin and vanilla-enhancing flavors, which trigger a requirement that such flavors are disclosed on the front label.

85.    The actual criteria for whether a flavor impacts the front label is if it "permits less of the characterizing flavor to be used than would otherwise be the case." Exhibit "C," February 9, 1983 Advisory Opinion (concluding that any "flavor that extends the characterizing flavor, that is, makes it appear that more of the characterizing flavor is present than is actually the case, simulates the characterizing flavor.").

86.    Based on the analysis of the Product, defendant's "Other Natural Flavors" "resemble, simulate and/or enhance vanilla flavor but are not derived from vanilla bean," and thus "would not comply with the intent of the flavor provisions of Category I ice cream." *See* Exhibit "M," FDA, Letter, Taylor M. Quinn, Associate Director for Compliance, Bureau of Foods, to Glenn P. Witte, International Association of Ice Cream Manufacturers, May 31, 1979 ("Quinn Letter, May 31,

---

[55] Nielsen Massey, "Which Vanilla?"; Slo Food Group, Madagascar Vanilla Bean Caviar, V. Planifolia ("Rich, sweet, buttery, Bourbon vanilla from Madagascar, known as the worlds favorite vanilla bean."); Kim Ode, Don't call it plain – vanilla is complex, even smoky, and may be a baker's best friend, Star Tribune, March 1, 2018. van

1979").

87.    The result is a vanilla ice cream with a trace amount of vanilla supplemented by artificial vanillin and "other natural flavors" like maltol.

88.    However, because the Product "is subject to the category I ice cream requirements," it "must contain only the characterizing flavor derived from vanilla beans." Exhibit "A," Summers Letter, April 10, 1979.

89.    The Product should be labeled as "artificially flavored" because the "artificial flavor [from non-vanilla vanillin] predominates," and it contains other flavors which extend vanilla. 21 C.F.R. §135.110(f)(2)(iii) ("Category 3").

VIII.    Conclusion

90.    Defendant has been contacted by flavor industry professionals residing in New Jersey, its home state, over the many years defendant has deceived consumers.

91.    These flavor industry professionals informed persons within defendant's Breyers Ice Cream division that their vanilla ice cream labeling was false, misleading and contrary to law.

92.    One of defendant's employees, knowing that Unilever is one of the largest companies in the world, perhaps in jest, rhetorically asked this/these individuals to look outside their windows at the "big building," inside of which were supposedly dozens of crack regulatory lawyers who were supposedly more knowledgeable than this/these person(s).

93.    These actions indicate a knowing effort to deceive consumers because defendant was made aware of these issues.

94.    Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

95.    Defendant sold more of the Product and at higher prices than it would have in the

absence of this misconduct, resulting in additional profits at the expense of consumers like plaintiff.

96.    The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

97.    Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

98.    As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $4.49 for cartons of 1.5 Quarts, excluding tax, compared to other similar products represented in a non-misleading way.

Jurisdiction and Venue

99.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

100.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

101.    Plaintiff Joyce Falborn is a citizen of New York.

102.    Defendant Unilever United States, Inc. is a Delaware corporation with a principal place of business in Englewood Cliffs, Bergen County, New Jersey and therefore is a citizen of New Jersey.

103.    "Minimal diversity" exists because plaintiff and defendant are citizens of different states.

104.    Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred, *viz*, the purchase of the Product and the misleading

representations relied upon by plaintiff.

105.   This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

Parties

106.   Plaintiff Joyce Falborn is a citizen of Nanuet, Rockland County, New York.

107.   Defendant Unilever United States, Inc. is a Delaware corporation with a principal place of business in Englewood Cliffs, New Jersey, Bergen County.

108.   During the relevant statutes of limitations, plaintiff purchased the Product within her district and/or State for personal consumption and/or use in reliance on the representations the Product contained flavor only from vanilla beans because that is what the front label said, and consumers like plaintiff have come to expect vanilla ice cream to contain only vanilla.

109.   Plaintiff Joyce Falborn purchased the Breyers Homemade Vanilla Ice Cream at Shoprite in Pearl River, New York in approximately September 2019.

110.   Plaintiff would buy the Product again if assured it did not contain non-vanilla flavor.

Class Allegations

111.   The class will consist of all purchasers of the Product who reside in New York and the other 49 states during the applicable statutes of limitations.

112.   Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

113.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

114.   Plaintiff is an adequate representatives because her interests do not conflict with other members.

115.  No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

116.  Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

117.  Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

118.  Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL"), §§ 349 & 350
(Consumer Protection Statutes)

119.  Plaintiff incorporates by reference all preceding paragraphs.

120.  Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

121.  Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

122.  Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

123.  The amount and proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because consumers expect vanilla ice cream to contain only flavor from vanilla beans, and will pay more for such Products.

124.  Reasonable consumers do not expect vanilla ice cream labeled only with "vanilla" to contain artificial vanilla, *viz*, vanillin.

125.  Through omitting these other flavors from the front label, defendant deceived consumers as to the source of the Product's flavor and labeled the Product contrary to the

requirements of New York and the FDA.

126.  Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

127.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

128.  Plaintiff incorporates by reference all preceding paragraphs.

129.  Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

130.  The amount and proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because consumers expect vanilla ice cream to contain only flavor from vanilla beans, and will pay more for such Products.

131.  Reasonable consumers do not expect vanilla ice cream labeled only with "vanilla" to contain artificial vanilla, *viz*, vanillin.

132.  Through omitting these other flavors from the front label, defendant deceived consumers as to the source of the Product's flavor and labeled the Product contrary to the requirements of New York and the FDA.

133.  Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

134.  This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

135.  The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

136.   Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

137.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

138.   Plaintiff incorporates by reference all preceding paragraphs.

139.   The Product was manufactured, labeled and sold by defendant and warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

140.   The amount and proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because consumers expect vanilla ice cream to contain only flavor from vanilla beans, and will pay more for such Products.

141.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

142.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

143.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

144.   Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers and flavor industry members to its main office over the past several years regarding the Product's flavoring.

145.   The Product did not conform to its affirmations of fact and promises due to

defendant's actions and were not merchantable.

146.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

147.  Plaintiff incorporates by reference all preceding paragraphs.

148.  Defendant's conduct was fraudulent because it willfully ignored the guidance of flavor industry participants and believed its large size and influence meant it did not need to comply with the law about disclosing non-vanilla flavors and that it was acceptable to mislead consumers.

149.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Unjust Enrichment

150.  Plaintiff incorporates by reference all preceding paragraphs.

151.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   May 29, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

7:20-cv-04138
United States District Court
Southern District of New York

Joyce Falborn, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Unilever United States, Inc.,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
    Tel: (516) 303-0552
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  May 29, 2020

                                        /s/ Spencer Sheehan
                                        Spencer Sheehan