Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd, Ste 409
Great Neck NY 11021-3104
Telephone: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*

United States District Court
Southern District of New York

7:20-cv-04138-KMK

Joyce Falborn, individually and on behalf of all others similarly situated,

                Plaintiff,

- against -

Unilever United States, Inc.,

                Defendant

First Amended Class Action Complaint

Plaintiff by attorneys allege upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Unilever United States, Inc. ("defendant") manufactures, distributes, markets, labels and sells "Homemade Vanilla Ice Cream" under the Breyers brand ("Product").

2. The Product is available to consumers from retail and online stores of third-parties and is sold in cartons of 1.5 Quarts.

3. The relevant front label representations include "Homemade Vanilla," "It's How Homemade Should Taste," a vanilla flower and a bucket of fresh cream.



4. The Product's website touts the presence of real vanilla from vanilla beans – "Rainforest Alliance (Certified) Vanilla."[1]



5. The Product's website states, "We pledge to use only flavors and colors from natural sources, and sustainably farmed fruit and vanilla."

---

[1] RFA stands for Rainforest Alliance Certified.

2

6. The side panel and webpage contain the "Breyers Pledge": "At Breyers, We Start With Only High Quality Ingredients…Our Colors and Flavors Come From Natural Sources…Our Vanilla and Fruit Are Real and Sustainably Farmed…Quality Since 1866."



7. Contrary to these representations, which only refer to vanilla, the amount of vanilla is significantly less than expected.

8. The Product's flavoring is not predominantly or significantly from vanilla beans but from a laundry list of flavoring compounds that are not found in any "homemade vanilla ice cream," because these added chemical compounds are designed to imitate the taste provided by

3

real vanilla beans.

9. The Product has no appreciable amount of vanilla beans and flavoring from vanilla beans.

10. Instead, the Product is flavored with vanillin from non-vanilla sources, and as a result, does not taste like vanilla.

11. Vanilla (*Vanilla planifolia Andrews* and *Vanilla tahitenis Moore*) comes from an orchid plant that originated in Mexico where it was first cultivated.

12. The vanilla orchid produces a fruit pod, the vanilla bean, which is the raw material for true vanilla flavorings.

13. The vanilla bean is heated in the sun and its flavor constituents extracted in alcohol.

14. The popularity of vanilla in the 19th century led to the isolation of the most predominant flavor component, vanillin.

15. However, vanillin separated from the rest of the vanilla bean does not constitute vanilla flavor.

16. Sensory evaluation of vanillin is mainly sweet, with a lackluster "chemical-like" taste and odor because it lacks the other molecules in vanilla.

17. Vanillin must be accompanied by other compounds to produce the familiar flavor and aroma consumers know as vanilla.

18. The availability of low-cost vanillin resulted in foods purporting to contain vanilla, which either contained no vanilla or a trace or de minimis amount, boosted by synthetic vanillin.

19. Vanilla's unique and complex flavor is due to its many odor-active compounds including acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls.

20. Distinguishing real vanilla from artificial vanilla is a challenging task because every time a new high tech authentication method is adopted, "bad actors" find ways to "beat the test," such as artificial vanillin designed to contain isotopes that are present in real vanilla.

21. Therefore, identifying the presence and amount of the following four vanilla marker compounds is valuable to authenticating vanilla:

| Compounds | Percent Present in Vanilla Beans |
|---|---|
| vanillin | 1.3-1.7 % |
| p-hydroxybenzaldehyde | 0.1% |
| vanillic acid | 0.05% |
| p-hydroxybenzoic acid | 0.03% |

22. While vanillin plays a significant role, it contributes less than one-third of the overall flavor/aroma impact of vanilla.

23. P-hydroxybenzoic acid, p-hydroxybenzaldehyde and vanillic acid are significant phenolic compounds which provide a significant part of vanilla's aroma.

24. Further, consumer and industry groups have long sought to prevent this deception, where consumers are sold a food labeled as "vanilla" only to later discover that it lacks the richness and layered taste that can only be provided by vanilla beans.

25. The ice cream labeling regulations require that where a product is labeled "vanilla," "strawberry," etc., all of its flavor come from the characterizing flavor – such as vanilla beans or strawberries. 21 C.F.R. § 135.110(f)(2)(i) ("If the food contains no artificial flavor, the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla," in letters not less than one-half the height of the letters used in the words "ice cream").

26. Ice cream products that are solely labeled with the name of the characterizing flavor

are considered "Category 1."

27. According to John B. Hallagan and Joanna Drake, the legal advisors for the FEMA:

> When consumers purchase ice cream labeled as "vanilla ice cream," they expect it to be flavored with vanilla flavoring derived from vanilla beans *unless labeled otherwise*. (emphasis added).[2]

28. According to flavor company Symrise, "If the flavor comes partially or fully from another source, the company must stamp 'vanilla flavored' or 'artificial vanilla' on the front of the package, a likely turnoff to consumers."

29. According to Daphna Havkin-Frenkel, editor of the Handbook of Vanilla Science and Technology, "Vanilla ice cream Category I contains only vanilla extract."

30. According to the International Dairy Foods Association ("IDFA"), vanilla ice cream is required and expected to have flavor only from vanilla beans.[3]

31. Though the text of 21 C.F.R. §135.110(f)(2)(i) does not distinguish between flavor from the natural characterizing flavor and natural flavors from sources other than the characterizing flavor, the regulations addressing this issue are supplemented by FDA Advisory Opinions and regulatory correspondence.

32. The product name of Homemade Vanilla is false, misleading, and unlawful because it does not get its flavoring only from the vanilla beans but implies otherwise.

33. No consumer's kitchen or pantry has the highly processed flavor mixture Defendant has used in the Product, which is represented as "homemade vanilla" but actually contains artificial vanillin.

34. The Product was analyzed to detect and isolate the four marker compounds, but only

---

[2] John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States, Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S., Perfumer & Flavorist, Apr. 25, 2018.
[3] IDFA, Ice Cream & Frozen Desserts Labeling Manual, 2019 Ed.

vanillin was detected, and not p-hydroxybenzaldehyde, vanillic acid or p-hydroxybenzoic acid.

35. Moreover, the laboratory analysis identified disproportionately high levels of vanillin, consistent with a product where much or most of the "vanilla" taste is not from vanilla beans, but from petroleum byproducts or wood pulp (lignin).

36. Added vanillin – as opposed to vanillin from vanilla beans – has always been an artificial flavor.

37. Artificial flavor is defined as a flavor that is made from synthetic source material and/or through non-natural processes.

38. The vanillin used by Defendant is not produced in a rainforest as the label indicates but is imported largely from Asia.

39. The artificially produced vanillin begins with eugenol, a major component of clove oil.

40. This process involves multiple chemical reactions.

41. The first step is the isomerization of eugenol to isoeugenol under alkaline conditions.

42. This leads to conversion into coniferal alcohol, then to ferulic acid.

43. The second step involves oxidizing the ferulic acid, and breaking it down into vanillin, under high pressure and alkaline conditions.

44. To speed up this process, some producers will add cobalt or other heavy metals.

45. The naturally produced vanillin also begins with eugenol.

46. Though it has been theorized that compounds like eugenol can be converted to vanillin through natural enzymatic reactions, this method is exceedingly slow and non-economical.

47. Assuming Defendant uses vanillin produced through the artificial process described, the Product is falsely labeled because it does not disclose "artificial flavor" on the front label and

ingredient list, as required by law.

48.     Assuming Defendant uses vanillin produced through the natural process described, the Product is also falsely labeled.

49.     This is because "natural flavor compounds that simulate vanilla but are not derived from vanilla beans" are treated by the FDA as artificial flavors, since the only "natural vanillin" is from vanilla beans.

50.     Any added vanillin is required to be labeled as an artificial flavor when used in a product labeled as "vanilla."

51.     The added vanillin means the Product contains a smaller amount of vanilla from vanilla beans, in contrast to the description as "Homemade Vanilla."

52.     The flavoring in the Product comes from artificial flavors with no relationship to vanilla beans, including vanillin and maltol. 21 C.F.R. § 172.515(b), 21 C.F.R. § 182.60 ("Synthetic flavoring substances and adjuvants").

53.     Maltol is not typically found in vanilla beans but is used to enhance the flavor and aroma of vanilla flavored foods.

54.     Maltol is used to increase sweetness, even though vanilla's mild sweetness is appreciated on its own and added sweetness detracts from the vanilla taste desired by consumers.

55.     Because vanillin is responsible for between one-quarter (25%) and one-third (33%) of the overall flavor/aroma impact of vanilla, the added vanillin skews the balance of the vanilla flavor compounds, and the result is dissimilar to what consumers expect from vanilla beans.

56.     That the Product contains non-vanilla flavors can be concluded by experts in the field of food labeling (but not the reasonable consumer) from the side panel:



**INGREDIENTS:** MILK, CREAM, SUGAR, CORN SYRUP, WHEY, EGG YOLKS, VEGETABLE GUMS (CAROB BEAN, TARA, GUAR), MONO AND DIGLYCERIDES, SALT, NATURAL FLAVOR, ANNATTO (FOR COLOR).

57.     That the "natural flavor" contains non-vanilla flavor is alluded to because the bottom of the side panel states "Natural flavor made with vanilla beans from Rainforest Alliance Certified™ farms."

58.     Describing one flavor ("Natural flavor") as "made with" another flavor – "vanilla beans" – is an admission that vanilla beans are *part* of the "Natural flavor."

59.     The other part of the "natural flavor" consists of artificial flavors.

60.     "Natural flavor" is a generic term for a combination of flavors that may contain *some* vanilla beans.

61.     According to an article on Yahoo Food in 2015, "The One Thing You Need to Know When Buying Vanilla Ice Cream," "Brands that print phrases like 'natural vanilla' [or 'natural

9

flavor'] on their packages may actually be pushing products that contain anything but."[4]

62. The Yahoo article continued, "Vanilla extract is the key to buying ice cream with good vanilla flavor . . . If it doesn't say vanilla extract, walk on by" because the vanilla "taste" is "actually imitation extract made from wood pulp."[5]

63. Dairy expert "Scott Rankin, a professor of food science at the University of Wisconsin-Madison, explained that the different wordings on the labels amount to industry shorthand for specific kinds of natural or artificial flavorings."

64. For instance, "natural vanilla flavor" often refers to "vanillin extracted from wood."

65. "Natural flavor" on the other hand, "(with no mention of vanilla at all) indicates just a trace of natural vanilla (there's no required level) and other flavorings such as nutmeg that merely trigger an association with vanilla."

66. The Yahoo! Food article is correct, and confirmed through further analysis of the side panel:

67. As FEMA indicated, consumers are especially misled in this scenario because the term "natural flavor" fails to disclose that the Product contains flavoring from non-vanilla bean sources, *viz*, artificial vanilla flavors.

68. Consumers are unable to know how much vanilla, if any, is part of the "Natural Flavor" ingredient.

69. Due to presence of artificial vanillin, the Product is required to be labeled as "artificial homemade vanilla" or "artificially flavored homemade vanilla." *See* 21 C.F.R. § 135.110(f)(2)(iii); 21 C.F.R. § 101.22(i)(2) (requiring front label statement of "artificially

---

[4] Yahoo Food, The One Thing You Need to Know When Buying Vanilla Ice Cream, May 20, 2015.
[5] See 21 C.F.R. §135.110(f)(2)(i) ("If the food contains no artificial flavor, the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla'").

flavored" where a food contains any artificial flavor which simulates the characterizing flavor).

70. Consumers expect, and the law requires, that the Product disclose the presence of artificial flavor which resembles the characterizing flavor.

71. By omitting "artificially flavored" from the front label, consumers are not told that the taste is not from vanilla beans but from a complex mixture of flavor compounds assembled to imitate vanilla.

72. Vanillin – and the other flavor compounds used in the Product – cannot provide vanilla flavor because they lack the numerous odor-active compounds present in vanilla.

73. Consumers prefer flavor from vanilla beans over artificial flavor because vanilla is a natural product, compared to highly processed artificial vanilla flavorings with additives.

74. Nielsen has reported that 62% of consumers say they try to avoid artificial flavors.[6]

75. New Hope Network concluded that 71% of consumers today are avoiding artificial flavors.[7]

76. Label Insight determined that 76% of consumers avoid artificial flavors.[8]

77. Because consumers are accustomed to foods disclosing the source of their characterizing, or main flavor, on the front label, the absence of such a disclosure gives them the impression it does not contain artificial flavoring.

78. Even though the Product purports to contain vanilla, the amount of vanillin relative to the other vanilla compounds results in a taste dissimilar to vanilla.

79. The Product's flavoring lacks the complexity and flavor notes associated with vanilla because vanillin has never been synonymous with vanilla.

---

[6] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016
[7] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.
[8] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.

11

80. Defendant knows consumers will pay more for the Product because the front label states "Homemade Vanilla" along with pictures of a vanilla flower and a bucket of fresh cream instead of "artificially flavored," "has some flavor from vanilla beans" or "does not taste like real vanilla."

81. Defendant's marketing is designed to – and does – deceive, mislead, and defraud Plaintiff and consumers.

82. Defendant sold more of the Product and at higher prices than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

83. The value of the Product that Plaintiff purchased and consumed was materially less than its value as represented by Defendant.

84. Had Plaintiff and the proposed class members known the truth, they would not have bought the Product or would have paid less for it.

85. As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $4.49 for cartons of 1.5 Quarts, excluding tax, compared to other similar products represented in a non-misleading way.

## Jurisdiction and Venue

86. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

87. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

88. Plaintiff Joyce Falborn is a citizen of New York.

89. Defendant Unilever United States, Inc., is a Delaware corporation with a principal

place of business in Englewood Cliffs, Bergen County, New Jersey and is a citizen of New Jersey.

90. "Minimal diversity" exists because the parties are citizens of different states.

91. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this district.

92. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

93. Venue is further supported because many class members reside in this District.

## Parties

94. Plaintiff Joyce Falborn is a citizen of Nanuet, Rockland County, New York.

95. Defendant Unilever United States, Inc. is a Delaware corporation with a principal place of business in Englewood Cliffs, New Jersey, Bergen County.

96. During the relevant statutes of limitations, plaintiff purchased the Product within her district and/or State for personal consumption and/or use in reliance on the representations the Product contained flavor mainly and/or only from vanilla beans because that is what the front label said, since consumers do not have nor use the complex proprietary artificial vanilla flavoring used here.

97. Plaintiff bought the Product at or exceeding the above-referenced price because she liked the product for its intended use and relied upon the front label claims, expected a vanilla taste, and that such taste would come exclusively and/or predominantly from vanilla beans and did not expect a taste of vanillin, provided by artificial vanilla flavors.

98. Plaintiff Joyce Falborn purchased the Breyers Homemade Vanilla Ice Cream on multiple occasions during the operative statutory period, at multiple locations, including Shoprite, 26 N Middletown Rd, Pearl River, NY 10965 in September 2019.

99. Plaintiff was deceived by and relied upon the Product's deceptive labeling.

100. Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

101. The Product was worth less than what Plaintiff paid for it and she would not have paid as much absent Defendant's false and misleading statements and omissions.

102. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labels are consistent with the Product's components.

## Class Allegations

103. The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

104. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

105. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

106. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

107. Plaintiff is an adequate representatives because her interests do not conflict with other members.

108. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

109. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

110. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

111. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL"), §§ 349 & 350
(Consumer Protection Statutes)

112. Plaintiff incorporates by reference all preceding paragraphs.

113. Plaintiff and class members desired to purchase and consume products which were as described and marketed by Defendant and expected by reasonable consumers, given the product type.

114. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

115. Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

116. Despite the absence of a required disclosure of artificial flavors on the front label, the Product contains artificial flavors including vanillin and maltol.

117. The amount and proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Product.

118. Plaintiff expected the Product to have more vanilla than it did and did not expect added vanillin, since the label did not state "artificially flavored."

119. Plaintiff expected a vanilla tasting product which she did not receive.

120. Plaintiff relied on the statements, omissions and representation of Defendant, and Defendant knew or should have known the falsity of same.

121. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

122. Plaintiff incorporates by reference all preceding paragraphs.

123. Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

124. The amount and proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Product.

125. Plaintiff expected the Product to have more vanilla than it did and did not expect added vanillin.

126. Plaintiff expected a vanilla tasting product which she did not receive.

127. Defendant had a duty to disclose the non-vanilla, artificial flavors and tell consumers the Product did not taste like vanilla because it lacked sufficient amounts of the compounds which provide the characteristic vanilla taste.

128. This duty is based on Defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

129. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

130. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

131. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

132. Plaintiff incorporates by reference all preceding paragraphs.

133. The Product was manufactured, labeled and sold by defendant and warranted to plaintiff and class members that it possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

134. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

135. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

136. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

137. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

138. The Product did not conform to its affirmations of fact and promises due to Defendant's actions and were not merchantable because Plaintiff expected a product that contained enough vanilla relative to any other flavorings in the Product to taste like vanilla.

139. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

140. Plaintiff incorporates by reference all preceding paragraphs.

141. Defendant misrepresented the substantive, quality, compositional and/or organoleptic attributes of the Product.

142. Plaintiff expected the Product to have more flavoring from vanilla beans than it did and did not expect added vanillin that was not from vanilla.

143. Plaintiff expected a vanilla tasting product which she did not receive.

144. Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

145. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Unjust Enrichment

146. Plaintiff incorporates by reference all preceding paragraphs.

147. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages and interest pursuant to the common law

and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: December 21, 2020

                                              Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

Spencer Sheehan
60 Cuttermill Rd, Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:20-cv-04138-KMK
United States District Court
Southern District of New York

Joyce Falborn, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Unilever United States, Inc.,

Defendant

First Amended Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 268-7080
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: December 21, 2020

/s/ Spencer Sheehan
Spencer Sheehan